**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARILYN J. JANSEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.:** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **UNITED STATES OFFICE** | ) | |
| **OF PERSONNEL MANAGEMENT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT-FEDERAL EMPLOYEES HEALTH BENEFITS ACT

**COMES NOW** Plaintiff Marilyn J. Jansen, by and through the under undersigned counsel, and for her cause of action against the United States Office of Personnel Management respectfully states the following:

1.      Plaintiff Marilyn J. Jansen brings her suit under 5 U.S.C. § 8901 et. seq., commonly known as the Federal Employees Health Benefits Act (FEHBA), as a participant under the Blue Cross and Blue Shield Service Benefit Plan (hereinafter, "the Plan).

## PARTIES

2.      Plaintiff Marilyn J. Jansen ("Mrs. Jansen") is a resident of Bollinger County, State of Missouri.

3.      Marilyn J. Jansen has a family history of high cholesterol and coronary artery disease.

4.      Mrs. Jansen was employed with the United States Veterans Administration (PHD, PA-C) psychiatric service until her retirement in 2003.

5.      Mrs. Jansen was forced to retire and accept Social Security Disability as the culmination of work induced declining health conditions made it impossible for her to continue to work.

6.      At the time of her retirement, Mrs. Jansen was diagnosed with coronary artery disease, angina, diabetes, hyperlipidemia, hypertension, asthma, hypothyroidism, fibromyalgia, fatigue, and neuropathy, among other persistent health conditions.

7.      Marilyn J. Jansen was and is a participant in the Blue Cross and Blue Shield Service Benefit Plan, a health benefits plan provided to former employees of the federal government under the Federal Health Benefits Act.

8.      The Plan was in full force and effect at all relevant times hereto.

9.      The United States Office of Personnel Management is an agency of the United States government, who may contract with qualified carriers of insurance to cover Federal Employers under 5 U.S.C. § 8901 et. seq.

## JURISDICTION AND VENUE

10.      The Plan at issue in this case is a governmental employee benefit plan under the Federal Employee Health Benefits Act.

11.      Venue is proper in this Court pursuant to 29 U.S.C. § 1132(f).

## FACTUAL ALLEGATIONS

### THE DISEASES

10.      Atherosclerotic Heart Disease, is what doctors call the condition when the coronary arteries get narrow or hardened.

11.      Better known as coronary artery disease, this type of heart disease is caused by a condition called atherosclerosis.

12.　　Atherosclerosis is a disease in which plaque builds up inside your arteries.

13.　　Plaque is made up of fat, cholesterol, calcium, and other substances found in the blood. Over time, plaque hardens and narrows your arteries.

14.　　Cholesterol travels through your bloodstream in small packages called lipoproteins.

15.　　Two kinds of lipoproteins carry cholesterol throughout your body: low-density lipoproteins (LDL) and high-density lipoproteins (HDL).

16.　　LDL cholesterol sometimes is called "bad" cholesterol.

17.　　A high LDL level leads to a buildup of cholesterol in your arteries.

18.　　Atherosclerosis can lead to serious problems, including heart attack, stroke, or even death.

19.　　Atherosclerosis presents in patients as fatigue, shortness of breath and angina.

20.　　Mrs. Jansen is a living example of these symptoms.

21.　　A diagnosis of the hereditary form of hypercholesterolemia (FH) is clinically determined if a family has a history of high cholesterol or a pattern of heart attacks or heart disease.

22.　　Hypercholesterolemia is the presence of high levels of cholesterol in the blood.

23.　　Unfortunately for people with FH, they have a hereditary form of hypercholesterolemia that can't be controlled simply through diet and exercise.

**MEDICAL HISTORY**

24.　　Mrs. Jansen's Father had a history of high cholesterol and ultimately died at age 74 of a massive coronary event while hospitalized and during a conversation with his physician.

25.     Mrs. Jansen's Mother had coronary artery bypass graft surgery when she was 76 years old after suffering from high cholesterol.

26.     Mrs. Jansen's siblings all suffer from various versions of coronary artery disease.

27.     Her brother, born in 1942, had by-pass surgery in 2007 and has since required additional stents.

28.     Her sister, born in 1943, has required stents in multiple surgeries.

29.     Her brother, born in 1948, had double by-pass surgery in 2000 (the graphs later failed) and additional stents since then.

30.     All five of Mrs. Jansen's children also suffer from high cholesterol and high triglycerides putting them at risk for heart disease.

31.     Because of this family history of high cholesterol and heart disease, Mrs. Jansen has regularly seen a cardiologist since 2000.

32.     In 2000, Mrs. Jansen was initially diagnosed with 50% blockage in the anterior aspect of heart on the right side.

33.     Mrs. Jansen's cholesterol rises to dangerous levels without medical intervention.

34.     Mrs. Jansen has tried to control her cholesterol with diet and exercise.

35.     Mrs. Jansen was prescribed statins for more than 10 years to manage her cholesterol as treatment for her existing Atherosclerosis.

36.     Statins work well at lowering LDL cholesterol.

37.     Statins are safe for most people.

38.     Known side effects of statin medication include muscle pain and liver problems.

39.     Mrs. Jansen's statin courses have included Lipitor, Lovastatin and Simvastatin.

40.     All three caused sever muscle pain that made daily life impossible.

4

41.     As a result, Mrs. Jansen was forced to stop taking the life saving statin medications.

42.     Mrs. Jansen's recent medical visits confirm that she still suffers from coronary artery disease, angina, diabetes, hyperlipidemia, hypertension, asthma, hypothyroidism, fibromyalgia, fatigue, and neuropathy, among other persistent health conditions.

**THE DECISION**

43.     On February 19, 2016, Mrs. Jansen's Cardiologist prescribed Repatha® injections every 2 weeks to control her cholesterol.

44.     Repatha® (evolocumab) is an injectable medication used to control high LDL cholesterol.

45.      The Plan requires prior approval before it will be covered Repatha® injections for cholesterol management.

46.     Mrs. Jansen properly submitted forms and information to The Plan for prior approval.

47.     On May 18, 2016 Blue Cross Blue Shield refused to approve Mrs. Jansen's request to cover Repatha® injections to control her cholesterol.

48.     In refusing to cover Repatha® to control Mrs. Jansen's cholesterol, Blue Cross Blue Shield indicated that:

> without a history and documentation of one atherosclerotic cardiovascular disease (ASCVD) or one cardiovascular event does not establish medical necessity for this drug

49.     On July 13, 2016 and accompanied by additional documentation, Mrs. Jansen appealed the decision of Blue Cross Blue Shield to refuse coverage for Repatha® injections to control her cholesterol.

50.     Nine days later, Blue Cross Blue Shield upheld the denial of Mrs. Jansen's request to cover Repatha to control her cholesterol.

51.     In refusing the appeal to Repatha® to control Mrs. Jansen's cholesterol, Blue Cross Blue Shield raised the evidence necessary to establish medical necessity with:

> There is no evidence provided of myocardial infarction (MI), revascularization, unstable angina, peripheral artery disease (PAD) or stroke. The patient does not have documented familial hypercholesterolemia (FH)."

52.     Mrs. Jansen sought review of the Blue Cross Blue Shield decision with OPM by correspondence dated August 1, 2016.

53.     On October 6, 2016 OPM responded and concluded that Blue Cross Blue Shield administered benefits according to The Plan documents.

54.     Ms. Janen's final recourse is a decision from this court, or risk myocardial infarction (MI), revascularization, unstable angina, peripheral artery disease (PAD) or stroke.

55.     Ironically, these are all events she hopes to avoid with administration of the Repatha® injections.

56.     Without the The Plan benefits she paid for, Mrs. Jansen cannot afford the cost of the Repatha® injections prescribed.

57.     Despite history and documentation of persistent Atherosclerotic Heart Disease, The Plan rejected Repatha® for continued medical control of Mrs. Jansen's cholesterol.

58.     By appealing through The Plan and then the OPM, Plaintiff Marilyn J. Jansen exhausted the administrative review process provided for him and is now able to bring this claim.

6

## COUNT I-BREACH OF CONTRACT

46.     Plaintiff hereby incorporates by reference the above allegations as though fully set forth herein.

47.     Defendant OPM wrongfully denied coverage for Plaintiff's Repatha® injections alleging that the treatment was not medically necessary.

48.     The Plan defines medical necessity as follows:

All benefits are subject to the definitions, limitations, and exclusions in this brochure and are payable only when we determine that the criteria for medical necessity are met. Medical necessity shall mean health care services that a physician, hospital, or other covered professional or facility provider, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing, or treating an illness, injury, disease, or its symptoms, and that are:

   a. In accordance with generally accepted standards of medical practice in the United States; and
   b. Clinically appropriate, in terms of type, frequency, extent, site, and duration; and considered effective for the patient's illness, injury, disease, or its symptoms; and
   c. Not primarily for the convenience of the patient, physician, or other health care provider, and not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results for the diagnosis or treatment of that patient's illness, injury, or disease, or its symptoms; and
   d. Not part of or associated with scholastic education or vocational training of the patient; and
   e. In the case of inpatient care, only provided safely in the acute inpatient hospital setting.

For these purposes, "generally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community and physician specialty society recommendations.

**The fact that one of our covered physicians, hospitals, or other professional or facility providers has prescribed, recommended, or approved a service or supply does not, in itself, make it medically necessary or covered under this Plan.**

7

Plan pg 147 (**emphasis included in original).**

49.     Mrs. Jansen repeatedly produced medical records, correspondence and documents to The Plan that showed the vital importance and medical necessity of the Repatha® injections.

50.     Specifically, Mrs. Jansen has provided the Plan with evidence of medical necessity in the following meaningful ways:

a.  That the prescribed use of Repatha® injections in her case is in accordance with generally accepted standards of medical practice in the United States; and

b.  That the prescribed use of Repatha® injections in her case is clinically appropriate, in terms of type, frequency, extent, site, and duration; and

c.  That the prescribed use of Repatha® injections in her case is considered effective for the patient's illness, injury, disease, or its symptoms; and

d.  That the prescribed use of Repatha® injections in her case is not primarily for the convenience of the patient, physician, or other health care provider, and not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results for the diagnosis or treatment of that patient's illness, injury, or disease, or its symptoms.

51.     Despite the observations and recommendation provided by medical professional who treat high cholesterol and heart disease, The Plan denied coverage for the Repatha® injections.

52.     Plaintiff was denied her claim for benefits under the Plan without reasonable cause or excuse, as she did provide evidence of the medical necessity for the Repatha® treatments.

53.     As a result, Plaintiff has been wrongfully denied benefits and has been damaged in the amount of benefits owed to her under The Plan for the Repatha® treatments.

WHEREFORE, Plaintiff Marilyn J. Jansen respectfully prays for judgment against Defendant United States Office of Personnel Management in an amount of unpaid benefits and for such further relief as the Court deems just and proper.

Respectfully submitted,
**OSBURN, HINE, & YATES L.L.C.**
3071 Lexington Avenue
Cape Girardeau, MO 63701
Telephone: 573-651-9000
Facsimile: 573-651-9090


By ___/s/ *John D. Ryan*_____
John D. Ryan, #51944MO
jryan@ohylaw.com
*Attorney for Plaintiff*


Certificate of Service

I hereby certify that a true and correct copy of the foregoing was electronically filed and served in accordance with this Court's electronic filing procedures this 6th day of January, 2017.


___/s/ *John D. Ryan*_____

9